This argument is 19-2194, In Re Beacon Biomedical. Mr. Lockton, whenever you're ready. Good morning, Your Honors, and may it please the Court, Andrew Lockton from McHale & Slaven for Beacon Biomedical. Your Honors, we believe the Board legally erred in its application of this Court's precedent regarding satisfaction of the written description requirement of Section 112. This error resulted in a lack of substantial evidence regarding the four limitations at issue on this appeal. And further, the evidence demonstrates that, at least with respect to Claim 1, the limitations were in fact reasonably conveyed to a skilled artisan. As addressed in our briefs, we believe the Board's decision should be reversed, particularly with respect to Claim 1, but at least should be remanded for the Board to apply the correct legal standard in analyzing the written description. Let me just ask you a housekeeping question at the outset, which is, if we were to hypothetically affirm the Board in its conclusion that there's no written description support for the no bioactive glass in Claim 1, does that end the case before us? That would, Your Honor. Okay, thank you. Please proceed. I'm sorry to interrupt. Oh, no. And I was going to say, because of that, because the first two limitations at issue are in independent Claim 1, I would like to focus my time on those, because if either of those limitations aren't, if I'm not able to convince you with respect to either, to both of those limitations, that would end this case. To either of those limitations? Yes, Your Honor. They're both in the only independent claim at issue here. The Board provided no real explanation of its legal approach, other than to say that the limitations were not disclosed. It adopted the examiner's rejections, which stated much the same. The articulation of the rejection is not much more than simply, it's not there. Now, in the red brief, my friend from the PTO argues in support of such a summary declaration, citing to Knowles and Hyatt, but those cases actually contradict such a rejection. In Knowles' case, the site described solder pads, and then in the claims, attempted to claim something much more specific. Now, in that case, the court affirmed that it wasn't disclosed, because only the general genus was disclosed, and a much more specific species was claimed, without any real indication that the inventor possessed such an invention. In contrast with that case, here, and the PTO concedes, we have disclosed many preferred embodiments, and the evidence shows that those preferred embodiments, none of them are materials that contain bioactive glass. Yes, but isn't the case law fairly clear, even the Nike case, which I think you rely on? There's a negative limitation here, not containing bioactive glass, and the board found that the specification does not inherently or explicitly exclude materials that contain bioactive glass. That's correct, right? It does not inherently or explicitly exclude materials that contain bioactive glass, right? I would agree, Your Honor, that the board made that finding, adopting the examiner's position, but I would argue that that is not the correct standard of the law. Okay, well, I just want to get, we can move on to that in a minute. And they also concluded that it doesn't provide any reason that the lack of bioactive glass is necessary or meaningful to the invention. Is that correct? It acknowledged that we have the argument and that there is evidence that there is a reason, but the board found it an insufficient reason. Okay, so now you can tell me why that's not adequate under our review, the board's analysis and reasoning. Well, first, to go back to the legal standard that the court just articulated, the law is not whether it is explicitly or inherently disclosed. It must be, as the Power Oasis case stated, actually or inherently disclosed. We know from Ariadne and Vasquez that explicitly is not the standard. We don't have to have an if-dispervice disclosure. And we know from the MC and Santeros cases that inherent disclosure is not the standard. Because if we disclose limitations and we cite, for example, in this case, disclosing the implant and disclosing the bioactive glass being an additional feature, arguably we can say that, well, under MC and Santeros, we can say that we don't have bioactive glass or we can make the statement that the implant could positively recite an implant containing bioactive glass. That's not the invention here. The invention here is an implant that doesn't contain bioactive glass that has bioactive glass coating in order to aid in the bone fusion. The issue is whether or not the description will reasonably convey to a skilled artisan that the inventor possesses the invention. That reasonably conveyed language that the court has expressly stated does not require that we expressly state the negative limitation. The specification that is issued here in paragraph 57 explains that, in effect, I think the easiest thing is if I quote it. It teaches that while the basic preferred embodiment is perfectly constructed of the, and I'm paraphrasing this part, the polyether ether ketone, polyaryl ether ketone, stainless steel, or titanium, or the like, the markers are preferably constructed from a bioactive glass having a composition such as. That language shows that there's a contrast between what the implant material is made of and what the markers are of the bioactive glass coating is made of. It's drawing a distinction between these two materials. We also know from the record that polyether ether ketone, polyaryl ether ketone, stainless steel, or titanium are materials that don't contain bioactive glass. For the board and the examiner to require an explicit statement in the specification that those materials don't contain bioactive glass would be to completely read out what a person of ordinary skill in the art reading the specification would understand, what would be reasonably conveyed. Can I ask you this question? Is it your position that the spec reasonably conveys that there shall not be bioactive glass in the internal part, or that it reasonably conveys there may or there may not, and since one of the possibilities is there may not, that's enough of a disclosure? My position is that under INSEE we know that such a specification would support both claiming it includes it or that it includes not including it. My argument to you right now is that this disclosure sufficiently or reasonably conveys to a person of ordinary skill in the art that the inventor possessed an implant that didn't contain bioactive glass. For example, an implant such as stainless steel, or titanium, or peat, or peat, all of which don't contain bioactive glass. And we know that it reasonably conveys that limitation to a skilled artisan because the examiner cited the Brosnahan reference and a, what I would term even more deficient, or a deficient, sorry, that's not the right word, a more broad disclosure as a sufficient disclosure of the claim limitation. In the Brosnahan reference, the examiner read the language that an insert could be made from a material such as metal, ceramic, polymer, or composite. And that was a sufficient disclosure, as the evidence shows, for an implant that doesn't contain bioactive glass. Now, stainless steel and titanium are metals, polyether ether ketone and polyaryl ether ketone are polymers. Under the examiner's fact finding, that's a sufficient disclosure. We look at that and we can see that the board's analysis and the examiner's 112 analysis was simply a matter of, was there an explicit disclosure? But we see from the examiner's fact finding in the 103 rejection, which was reversed because of a different reason, that a disclosure such as was made in paragraph 57 of the specification is a sufficient disclosure in order to claim an implant that doesn't contain bioactive glass. Now, with regard to the second limitation of claim one, the wrap removal, we can also look to the examiner's finding with regard to using a wrap. The examiner rejected, in the 103 rejection, argued that removing a wrap prior to the installation is an inherent feature of using a wrap. It's part of its necessary function. It has to be removed. Because that limitation would be inherent in the claim including a wrap, then that limitation should also be found to satisfy the requirements of section 112. So, an issue here is that we don't have much to go on from what the board or the examiner said, but what they did say, the requirement for explicit or inherent disclosure is not the law. We would ask that the board, we would ask that this court reverse the board's decision with regard to claim one because the first limitation at issue, not containing bioactive glass, is adequately supported, is reasonably conveyed based on the examiner's fact finding. And the second claim limitation of claim one, that the wrap is removed just prior to installation, is an inherent feature as conceded by the examiner. With regard to claim eight and nine, we don't have the board's analysis or their reasoning, more than to simply say it's not there. And therefore, we would ask that if the court is not inclined to reverse those rejections, that they be at least remanded. Since I find I'm repeating myself, I would like to reserve the rest of my time. Thank you very much. Let's hear from the government, the PTO. Ms. Schoenfeld. Thank you. May it please the court. The new claim limitations in claims one, eight, and nine were added during prosecution in order to overcome prior art. Can I just ask you the same housekeeping question I asked your friend at the outset, which is if we were to hypothetically agree with the board with respect to the no bioactive glass limitation, does that in this appeal? Yes. So, actually, if you agree with either limitation, the wrap removal limitation or the no bioactive glass limitation, if you believe that either of those do not have proper written description support, then you can affirm the board's decision because then claim one and claims eight and nine do not meet the written description requirement. Okay. I'm sorry to interrupt. Please continue. So, when Beacon Biomedical added those claim limitations in order to overcome the prior art, they did not point to the specification as the MPEQ recommends. And, therefore, the board and examiner pointed out that those claim limitations, as opposing counsel admitted to, that those are not explicitly in the specification. So, then it was on Beacon Biomedical, it was their burden to explain and show how one of ordinary skill in the art would understand the fact to find those claim limitations. And they didn't come forth with any objective evidence. They didn't talk about what the level of a person of ordinary skill in the art would be. They didn't provide an explanation of how a person in the ordinary skill in the art would, based on the four corners of the specification, how you would get from the disclosure in the specification to that newly added claim limitation and what would be understood. But, based on that, the board's findings were sufficient. You know, the board said, as is allowable in the law, that these limitations are not in the specification and addressed Beacon Biomedical's argument. Therefore, we think that substantial evidence supports the board's determination that the claims didn't meet the written description requirements and we ask this court to affirm. Let me tell you, there's only one thing that happens to be bothering me personally about this case, and that's with respect to the second question, which we don't necessarily even have to reach, but the remove just prior to installation. Because there's a lot of back story here and your friend is arguing about obviousness, you know, the standard for obviousness versus written description, and frankly, I'm not necessarily buying it. But with respect to this particular limitation, I am troubled that the examiner really used the word inherently when he was dealing with the obviousness. He didn't just say it was obvious. He used the word the wrap is inherently removed prior to installation. So, I'm having a little trouble not transferring that conclusion by the examiner about inherently removed to allow this limitation to stand here because of the inherency. Do you understand my question? I do, I do, and I think I can help you. I have two responses. A, as we pointed out in our brief, that obviousness and written description disclosure are two separate inquiries, but also I would have us turn to the appendix of 403 with the examiner found. And the examiner did say, and I would actually say 403 and then 408, there's more explanation. So, the examiner did say that, yes, in order for the wrap to function, it has to be removed, but the just prior part was intended use. And then the examiner relied on the fact that, okay, well, if you have the structural limitation, you would have that intended use. And then, as the examiner said on 408, you could remove it just after or you could let it biodegrade. So, it could be removed, but it's not necessarily removed just prior to installation. And that is a plain limitation that they decided to add that there's absolutely zero support for in the specification. Does that answer your question? Well, it tries to answer the question. I'm still looking at 402 and 403, and the quote seems pretty clear to me. This is quoting the examiner's language, that the wrap is inherently removed prior to installation of said implant. Right. I guess I was trying to find 403. Sorry. 403 on 13, where it talks about the intended use. And then on 408, where the examiner does explain that the different times of removal that could be possible. Okay. I take your point. Can I ask you the same question I asked earlier? And I'll try to do it in a concrete term. So, the spec talks about the stainless steel. Would it suppose, and you may want to contest the assumption, but suppose a skilled artisan would read that and say, huh, there might be bioactive glass or there might not. I certainly could understand either way. Would that be enough written description support for a limitation that said no bioactive glass? I don't believe so. I know that the NC case that opposing counsel mentioned talked about alternatives. So, I think if you give specific alternatives and, you know, there was more explanation of we can use bioglass for these reasons or we cannot use bioglass for these reasons. But one of ordinary skilled in the art, I mean, reading this stack, which talks about using bioactive glass for markers and talks about, you know, even does mention using glass and piece together. I don't think one of ordinary skilled in the art would clearly understand that the inventor was the criticality of using or not using bioactive glass. So, I do not think either way is sufficient written description. But not because as a legal matter, if a skilled artisan would understand that both alternatives, would immediately envision both alternatives upon reading it, you're not saying that as a legal matter that would be insufficient to claim either one of the alternatives, but simply that there wasn't enough evidence for the board to have to find that a skilled artisan would envision both alternatives. I think certainly substantial evidence, the latter is true. Legally, I guess I don't think it meets the legal test yet because you do have to clearly lay out those alternatives. And so, I think if there are clear alternatives laid out legally, you could have support for a negative limitation. Are there any further questions? I do not think so. I will yield the rest of my time. Thank you. Thank you. Mr. Lockton, you've got some time left on rebuttal. Mr. Lockton? Oh, my apologies, Your Honor. I was still muted. Thank you. It sounded like my friend from the PCO was arguing that the board's analysis of simply saying it's not there is sufficient because when the claim limitation was made, was added during prosecution, the specification wasn't clearly pointed out. But the specification was clearly pointed out when we were arguing on the 103 issues. And the majority of the prosecution dealt with the 103 issues. The original claim was an implant, and it was rejected based on a prior art reference that was an implant that had bioactive glass. It was teaching a method of actually making a composite structure that included bioactive glass, which actually evidence is showing that most of these materials don't contain bioactive glass. It was added as clarifying the distinction, and it was addressed in that clarification of the 103 rejection. But what we did when adding the language and when arguing during prosecution is we specifically pointed out to the specification that there are preferred embodiment materials, and those materials are understood by a skilled artisan as not containing bioactive glass. It's a pretty straightforward manner in material science that if we're talking about stainless steel, if we're talking about titanium, if we're talking about peak or peak polymers, these are materials that have a certain structure. They have a certain composition, and there is nothing about those compositions which would inherently or even suggest that they are materials that contain bioactive glass within them. And so by citing to the specification showing that there are materials that are understood because they're objectively materials that don't contain bioactive glass within them, we have adequately conveyed to a skilled artisan that the inventor is in possession of an implant that doesn't contain bioactive glass. To go back to Judge Toronto's question regarding the sufficiency of the disclosure, I believe that the NC case presents actually a good inverse of the position that we're arguing here. It quotes the Sanchez case where in that case if we're disclosing a material and an additional material, for example in this case we're disclosing the implant and it is being coated with bioactive glass, then what that case tells us is that that's a sufficient disclosure for adding the material or taking the material away. Now, since we're talking about adding bioactive glass to the implant material itself, coating it onto it, putting it into crevices of that material, under that law that should be sufficient to disclose to a skilled artisan and under this court's precedent that the implant itself is sufficiently described as not containing bioactive glass in order to satisfy the 112 requirement for written description. Thank you. If there are no further questions from the court, I believe we're out of time. Thank you. We thank both sides and the case is submitted. Thank you, Your Honor. The Honorable Court is adjourned until tomorrow morning at 10 a.m.